Good morning, Vince Bronco, Federal Defenders, on behalf of Mr. Cisneros. Mr. Cisneros' deportation violated due process because the immigration judge failed to advise him that he was eligible for relief of withdrawing his application for admission, which was a plausible ground for relief. The statute specifically provides, and this is at 1225A4, an alien applying for admission may, in the discretion of the Attorney General, and at any time be permitted to withdraw the application for admission and depart immediately from the United States. What is the basis of which you say that it's a plausible claim, given that he had committed fraud at the border, had no work permit and other things? Well, I think the first thing is to notice that under withdrawal of application of admissions, there's different discretions at different times of the proceedings. You know, I don't understand that. I'm sorry, I couldn't understand you over the phone. I do not understand that point. Well, you have to look back at the history of this statute and of the immigration law as it developed. Initially, there was some dispute of whether or not an alien could just simply withdraw his application when he came to the port of entry. They said, yes, someone can withdraw that application. Later, it was modified in the matter of Gutierrez, and they said, well, if the DHS is objecting to this withdrawal of application and inadmissibility has already been determined, then you have to make further findings, and that is whether or not there is factors relating to inadmissibility in the interest of justice. But if you look at the plain statute, it doesn't incorporate those factors. Mr. Bronco, what do we do with the language of the regulation? I'm looking at 8 CFR 1235.4. That provides that the attorney general may, in his discretion, permit withdrawal. And then it goes on to say, but nothing in this section shall be construed as to give an alien the right to withdraw his or her application for admission. It seems that your argument is to the contrary. He does have that right. No, not at all. An alien does not have the right to the actual relief. That is within the discretion of either the inspector under this regulation or the immigration judge under the other regulations. What it means, essentially, is someone coming in the country can't just say, no, I want a return. The immigration judge or inspectors have the right to use their discretion to say. But doesn't that tie in with Judge Reimer's concern of plausibility? Because in this case, your client presented fraudulent application for admission. The regulation says that he doesn't have the right to withdraw. And I believe there's case law that says once we've caught you trying to enter in that way, then essentially we're not going to give you the right to withdraw once you're essentially in expedited removal proceedings. Well, first of all, these were not expedited removal proceedings. But the thing, I would agree with the premise that if. This is not a proceeding before the immigration judge.  I got the facts confused. This is the immigration judge proceeding. So the applicable regulations, this immigration judge, if I'm understanding correctly, is 1240.1. Is that correct? Correct. And so that describes that the immigration judge shall not allow an alien to withdraw unless the alien established that factors directly relating to the issue of inadmissibility indicate that it's in the interest of justice. And the definition of factors directly relating to the issue of inadmissibility talked about, you know, inadmissibility. And I couldn't understand how your factors that you were talking about, some equitable factors, related to the question whether he was admissible or inadmissible. Can you explain that part? Well, I believe your question has two parts. One is that a correct reading of the regulation, which I dispute. And second, can we establish prejudice under that reading? So let me address the first, and that is at the beginning of the regulation, it says an immigration judge may allow only an arriving alien to withdraw an application for admission. It's after that where they start speaking once the issue of inadmissibility has been resolved and permission to withdraw an application should only be granted only with the concurrence of the service. So our contention is the latter part of showing factors relating to inadmissibility and relating to the interest of justice. That only kicks in after inadmissibility has been established and only if the DHS doesn't concur with the withdrawal of application. And this is supported. Are you saying that the IJ, so help me understand what the sequence of events should be in your view, that the IJ, the first thing the IJ should say to the immigrant is, do you wish to withdraw? Is that your comparison? That should be one of the general advisals that an immigration judge says, that I have the discretion to allow you to withdraw your application for relief. Does anyone want to take advantage of that process? Just as they advise regarding voluntary departure or other types of relief that become apparent during the hearing. So they should make that advisal because they have a broad range of discretion at that point, and it is only after inadmissibility has been determined that they have less discretion whether or not to grant this relief. Let me also just go back to a more threshold issue under where you're getting the obligation for the immigration judge's duty to inform. The alien, I take it, is from HCFR 1240.11. Is that correct?  The IJ shall inform the alien of apparent eligibility to apply for any of the benefits in the chapter. And if I understand the government's argument, there's a question about whether there is any apparent eligibility because there's no criteria that's set out in the regulations for withdrawal, at least according to your argument. What is the apparent eligibility? Are you saying any alien or any arriving alien, or what's your view of what apparent eligibility means? Yes. An arriving alien, the immigration judge or the inspectors have the discretion, as provided in statute, to allow them to withdraw their application. And I think what's significant – So even though there's no criteria, you're saying that this has to be – withdrawal of application for admission. Yes. Because an immigration judge has the discretion to grant this relief, then that discretion must be exercised. And that comes right from the Supreme Court case of Icardi, and I quote, and if the word discretion means anything in a statutory or an administrative grant of power, it means that the recipient must exercise his authority according to his or her own understanding and conscience. And is there an application process for withdrawal? Because it says apparent eligibility to apply for a benefit. Is there an application process? I believe it can be as simple as an oral request, and that comes from the statute itself. It uses the word permitted. It would be very odd for you to be permitted to do something if you didn't ask permission. I don't see – there's nothing in the statute that refers to applying. So the statute says an alien applying for admission may be permitted to withdraw, so it doesn't use application with respect to withdrawal. No, it uses the word permitted. So you can apply for asylum. You can apply for voluntary departure. But how do you apply for withdrawal? It's not set out in the statute. So you're just reading that in, is that right? I'm making – yes, and I believe the statutes actually compel that reading. I mean, this is a benefit to an alien. It's actually a benefit to the government because they can avoid hearings. So, you know, it expressly says the benefits enumerated in this chapter. Also, you can look at the – Is there anything that says withdrawal is a benefit? It's in the case law that, yes, that it benefits the government by saving resources, but it's also a benefit in the sense that you avoid the consequences of a deportation and the stigma of deportation. The other part to look at in that same regulation of 1240.11e is – Nothing contained in this section is intended to foreclose the respondent for applying for any benefit or privilege that he or she believes himself eligible to receive under this part. And this part, also the withdrawal of an application for an admission, is in that same part of the regulation under 1240.1d. So they've used specific words to say, okay, they've differentiated between chapter, section, and part. And the thing is that withdrawal of application is not only in the same chapter. It's in the same part. So any reading of this statute is that the person should be able to apply to. And I think it also goes further into just basic due process concerns. Even if we find, though, a technical due process violation, don't we still have to look at whether there was any prejudice? And I'm really hung up on this. The guy presents a false form of identification at the border, and yet he wants to withdraw his application. And I can't imagine why we would allow him to do that when he's tried to sneak his way in in this fashion. Well, let me correct a couple things. First of all, this is not the false documents case. I think that's one of the later ones. This is the allegation that they made is that he made a false claim to United States citizenship. But that's still an attempt to enter the United States by fraud, is it not? If proven, yes. And that's one of the problems and one of the types of relief for withdrawal of an application. I mean, you were saying that we don't have to – by allowing someone to withdraw before these things are litigated. Meaning can they – But procedurally in the deportation proceeding, hasn't he already conceded that he is a citizen of Mexico and not admissible? No, that's what we're saying. That's the – one of the main arguments is that before that ever happens, he had a right before he's made these – No, no, no. I understand your argument, but as this thing played out, he had already made those admissions to the immigration judge, had he not? I don't – I mean, yes, he made those admissions during the immigration hearing, but what our argument is that he should have been allowed to withdraw his application before he makes those. I understand that, and I'll grant you that you may have maybe a due process violation with regard to the failure to advise, but then to find a constitutional violation of due process protection, don't we also have to look to the prejudice problem? Yes, and let me pinpoint on that. Because the immigration judge had so much discretion before he took the admissions, he should have used that discretion. And our card, he says, when a judge is granted discretion and doesn't use it, that itself is prejudicial and requires remand, meaning that there was no – there were no bars before the admissions to his inadmissibility whatsoever, and the judge was aware of equities, meaning that he was presented with a young, I think 22- or 23-year-old English speaker that had been in the United States almost his entire life. So those presented the judge equities that says, this might be the perfect opportunity not to litigate whether or not he actually made a false claim and not to litigate whether or not this drug trafficking offense that is overbroad under this Court's law, this is the perfect person that I should use my very wide and broad discretion to allow just simply to withdraw his application.  All right, very well. Good morning, Your Honors and members of the panel. My name is Douglas Keene. I'm appearing on behalf of the United States. I'm an assistant United States attorney in the Southern District of California. Cisneros' appeal presents really one question, but there are two independently dispositive wings to that question. The first issue is really, does the mere freedom to ask for something in the immigration context create a constitutional right to be advised to ask for that thing? And the second issue, the prejudice prong, is very similar, lesser in our opinion, however. Does the mere freedom to ask for something in the immigration context mean that one has plausible grounds for obtaining that relief? Now, with regard to the first question, the freedom to ask, and that's all that a defendant has. We need to be very clear about this. All an alien has is freedom to ask for withdrawal of application, does not create a constitutional cue card to do so. An alien in immigration proceedings, as defense counsel has pointed out, I'm sorry, as the appellant has pointed out, can ask for anything. Cisneros recognizes this. Right, the statute contemplates that the alien can be permitted to withdraw. And then the regulations, as we've interpreted them, say that the immigration judge is supposed to inform the alien of those sorts of potential benefits. Now, I don't know if this permission to withdraw constitutes eligibility to apply for a benefit, but assume for present purposes that it is. Why isn't it just the same as the right to apply for asylum or voluntary departure, where the IJ's failure to inform the alien we would certainly say was an error? Well, because withdrawal of application is so materially different. Now, again, just going with the assumption that the court has posited, and we don't agree with that, but going with that assumption, the procedure that Congress authorized in the case of all the other forms of enumerated relief, which incidentally is what the regulations are referring to, is enumerated relief, not just any form of conceptual relief. They specifically enumerate an alien's role as applicant. They specifically enumerate criteria for the alien's eligibility. They specifically enumerate procedural constraints on governmental power and how that procedure is to be carried out. In addition, the regulations themselves then will apply to that and acknowledge this is an enumerated form of relief to which the alien may be entitled. It will mirror all of those procedures and all of those enumerations set forth by Congress, and in so doing, the alien has a transparent expectation that those procedures will be followed. None of those things exist for withdrawal of application, and here is why. Withdrawal of application is congressional recognition of a single expression of prosecutorial discretion, and that is not an entitlement. As counsel pointed out. But doesn't the regulations then go forward and create certain criteria, however minimal, including before the immigration judge? I mean, so the statute is fairly sparse. There are two different regulations addressing this very issue. Well, that's correct, Your Honor. I guess they address withdrawal of application, but the CFR 1235.4 says that an alien has no right to apply for withdrawal of application. Specifically says the alien is not to construe this as implying a right to withdraw for application. So defense at that point, or Cisneros at that point, has to retreat to the argument, well, he has a constitutional right to ask for it. Well, isn't that true about other benefits as well? Not only about other benefits, but about anything. A defendant has an alien in immigration proceedings can ask for a cup of coffee. But by the defense's rationale, by Cisneros' rationale in this case, the IJ would then be required to intuit, what do you believe you are entitled to, and then have to discuss that. But coffee is not referenced in the Act, whereas withdrawal is. I'm not sure why that is. Well, the Act also references that. My point being, Your Honor, and I understand where you're going with that, my point being that the agency's right not to prosecute altogether is also referenced in the Act. The agency has the prerogative, and the case laws even recognize the prerogative, to simply turn someone away at the border. That's an even expanded form. Withdrawal of application is just an expression of that prosecutorial discretion, and Congress saying, look, you've done this for years and years. This has been in the immigration inspector's handbook for some time. We are going to acknowledge that this is a proper expression of prosecutorial discretion on the part of the agency. However, the agency then created two sections of the CFR, one of which said, let's be absolutely clear. The alien has no right to withdraw application. Let's be exceptionally clear. We are going to allow the immigration judge to participate in the agency's plenary discretion to grant, to allow, to invite and allow withdrawal of application, but only under certain circumstances. How does your prosecutorial discretion analogy work with the Regulation 1240.1 regarding the what the immigration judge should or should not do?  Well, it does, Your Honor. If I may, if I can explain, 1240.1 sub D states that an IJ can allow withdrawal of application post-determination of the alien's admissibility. What it's saying is we have the discretion to allow, invite and allow withdrawal of application. We have some case law in the agency that we like that says that IJs can also participate in this, but IJs have a certain amount of independence from the agency. So without ceding any of our discretion whatsoever, we will allow IJs to participate in this, but only under certain circumstances. The important thing that Cisneros, I think, overlooks is that in every single regulation, particularly the one that the Court has just cited, they stay specifically with our concurrence, with the agency's concurrence. This is exactly what you would expect from a promulgator who never intended withdrawal,  but rather said there is a role for the IJ in this process, but it has to be by our rules, and we've got to agree to it. Now, they argue that that language about only with the concurrence of the service is in the phrase once the issue of inadmissibility has been resolved, and argue that the extension of this benefit or the ability to apply for a discretionary withdrawal should be done before the inadmissibility determination is made. That's what Cisneros argues, but it's actually not correct. That's not what the regulation says at all. It simply says first an IJ may allow an arriving alien. So it's saying, okay, here's our second one. After a matter of due tiers, we're going to codify this in the regulations, and we're going to allow immigration judges to participate, but there are rules. And the rules are once the issue of inadmissibility has been determined, then the IJ can participate in this. But if you do, you need our concurrence, and we want you to consider factors relating to admissibility or inadmissibility only. And what that means is this is not an equities test. This is not about how nice he is or how bad you feel about the case. It needs to be a question of law, not equity, and the question of law simply comes down to the question of admissibility. Are you saying that the IJ has no discretion before he determines that the alien is inadmissible? With the concurrence of the service, the IJ could participate in that process. Before he determines inadmissibility. So once the issue of inadmissibility has been resolved, is that a condition precedent for the IJ to make any reference to withdrawal? Yes, that's my question. I'm sorry, could you ask that again? Is determining inadmissibility a condition precedent for the IJ to discuss withdrawal? So the IJ is foreclosed from discussing withdrawal with the alien before making that determination of inadmissibility. Is that how you read the regulation? I don't know that an IJ would be foreclosed, but an IJ certainly is not required to, and we would read the regulation. I think the regulation plainly states that the IJ's role comes into its own after the determination of admissibility has been made, because that's what an IJ does. At that point, then the IJ is a player on the scene. If the CFR, if the promulgators or Congress, had ever intended withdrawal of application to be treated as an enumerated form of relief, then there would be a process for that, for the IJ perhaps beforehand as well, and for advisals and warnings and all these things, but there aren't any. And its absence, withdrawal of application's absence, from the one other section that Cisneros leans on, CFR 1240.11, lists all of the other forms of enumerated relief and does not list withdrawal of application. That is exactly what one would expect in a consistent reading of all of the regulations from a promulgator who never viewed withdrawal of application as an enumerated form of relief. Continuing, and if I have not completely answered your question, please rephrase. The actual test, then, is not whether or not an alien may ask for something, because again, an alien can ask for anything, and an IJ can advise on anything. The question is, does a due process entitlement arise in these matters? The actual test is, in the immigration context, was a procedure authorized by Congress? Does it enumerate the alien's role as applicant? Does it enumerate criteria for the alien's eligibility? Does it enumerate procedural constraints on governmental power? That's the first prong. Second prong is whether the agency adhered to matching and relevant CFR standards. Matching and relevant, and that means not drafting in other ones that don't apply, but looking at the CFR as a whole, are there matching and relevant standards, and did the agency act consistently with that? And then third, looking to preexisting judicial recognition of that practice for some guidance into how the analysis should be completed. Now, in the case of asylum, that test passes step-by-step. In the case of cancellation of removal, step-by-step. Voluntary departure, withholding of removal, adjustment of status, that test passes step-by-step. Not a single one of those prongs applies in withdrawal of application. Not a single one. And that is the basis of the government's contention that withdrawal of application is rather an expression of prosecutorial discretion and not an enumerated form of relief. If it were an aspect of due process as to which advice should have been given, the alien would still have to show prejudice. That's correct, Your Honor. How would the government propose that prejudice be measured? Well, that actually is probably the most telling part of the analysis because it is essentially impossible. I mean, I can discuss the prejudice with regard to Cisneros' case, but before we can do that, we have to look at the essential circularity of a prejudice analysis when you're looking at a form of alleged relief, anyway, that has no procedure and no method whatsoever to it. It is like trying to count the number of broken eggs that the chicken decided not to lay. There's no way to anticipate whether withdrawal of application is going to be granted because it is entirely up to the agency to decide whether it will even be invited in the first place. So the first problem with the prejudice analysis, and the reason why Cisneros wants to spend as much time there as possible, is because it presumes what can't be presumed, that there is a procedure and that there is a methodology for withdrawal of application when there is not. You're doing a very good job of arguing me out of believing that he can't show prejudice. I'm sorry? You are doing a very good job of convincing me that he cannot show prejudice. Thank you, Your Honor. And I can complete your question because I know that we do want to discuss prejudice. If we were to take the Court's previous presumption, let's say, for example, that we do have to do a prejudice analysis, how would that be done? That's the preposterousness of this particular case because Cisneros is saying someone who comes to the Port of Entry... Look, do you disagree, I think with Judge Tolman's suggestion, that when you come across the border and falsely claim U.S. citizenship, that that is a deal-breaker for withdrawing your application? Yes, Your Honor, it absolutely is, and it's a statutory deal-breaker as a matter of fact. Okay, so if he did that, I assume it's your position he cannot show prejudice? Even if he had been granted a withdrawal of application, he would have been in exactly the same position knocking at the door at San Ysidro Port of Entry the next day. He would be inadmissible because he had orally false claimed U.S. citizenship. I understand. Maybe I'm just not being very clear. Does that show prejudice or not? No, the defendant in this case cannot show prejudice. And that's because he can't show prejudice because withdrawal would never have been granted because he made a false claim of citizenship? Is that your position? Or even if withdrawal had been granted? Could you just answer that, please? Oh, withdrawal, yes, withdrawal would not have been granted. The service, there's no indication whatsoever that the service invited the defendant to withdraw application. So he didn't have any right to do so. And is it the service's practice or that, or if the immigration judge's practice to say, if you've made a false claim of citizenship, you are not entitled to withdraw. I will not allow you to withdraw. Or, because that would be one argument to say he could show no prejudice. That's the direction that the district court in this case went, was looked at all the circumstances. And what does the service say? Well, the service didn't chime in on the issue, but the, I mean, the service didn't invite him. I mean, the statute says that the service may allow, and the service never once opened up the issue of withdrawal of application. So it wasn't on the table. The defendant had no rights whatsoever with regard to withdrawal. So I think it is fair to conclude that the service would not have concurred with withdrawal of application, particularly since, as the district court noted, having made an oral false claim of U.S. citizenship, he's not eligible. And it wouldn't have been fair or appropriate. That's an issue relating to admissibility. He's not eligible for what? For admissibility. Because an oral false claim of U.S. citizenship forecloses future admissibility. Let me see if I understand you from my perch up here on the ceiling. Look, are you saying that he cannot show prejudice because he has not shown that the service would have been on board the program? I suppose our answer would be two-part. He can't show prejudice first and foremost because he can't show eligibility. But second of all, he cannot show prejudice because he presents no factors relating to admissibility that would have warranted the immigration judge then asking the service to concur with an exercise of discretion. And what would those factors be? Well, the district court correctly noted that he had never had any prior immigration status whatsoever. And so that did not give him any additional standing to try and defend a position that he already had. He never had any right to come to the United States. Second were his criminal convictions. And then third was the fact that he had made an oral false claim to U.S. citizenship. So why don't all the factors – I mean, you could equally well read it as saying, if the factors show that he's inadmissible, then he may as well just withdraw. So that would be the situation when you would grant withdrawal, since he isn't admissible anyway. I mean, how do you read that language? What factors would an IJ determine directly relate to the issue of inadmissibility that would show that he should be allowed to withdraw, that it's in the interest of justice to allow him to withdraw? That's a very helpful question because typically withdrawal of application, to give some perspective, is granted by the agency and has been done even before it was statutized, to children and people with mental defects, where the agency has looked at it and said, okay, they've come to the port of entry, perhaps they've got parents in the United States, an aunt or an uncle puts them on a bus or some vehicle and sends them in, but this child is seven years old. Did not intend to come in and violate the laws of the United States. If we put this child into immigration proceedings, this child will have an A number and a record and may be precludable for life. That's not fair. In our discretion, we are going to choose to turn this person back. That's typically when withdrawal of application has been practiced traditionally. Defense is now trying to say, Cisneros is now trying to say, hey, it's open to any alien at any time, and that's in the statute. Any alien at any time lets open the floodgates. Every single alien who was not advised that he should ask, again, not entitled to get it, should just ask for prosecutorial discretion to be exercised on his behalf, should then invalidate all of those immigration deportation proceedings for the sole gesture of coming back into the United States and getting a free do-over, including someone who just got caught coming to the port of entry falsely claiming to be a United States citizen. I think you're out of time. I certainly am, Your Honor. Thank you very much. Thank you very much, Mr. Keene. Mr. Brokaw. I'll try to make a couple quick points, but first of all, I think the government has actually been somewhat proving my case on prejudice at least before inadmissibility has been determined, because the IJ, with the concurrence of the DHS, has so much discretion, it is almost inherently plausible that he would be... Well, it's discretion that is informed by the regulatory factors, one of which is to find that it is in the interest of justice to do so, and as I understood Mr. Keene's last answer, there are a number of specific facts about Mr. Cisneros' case that go the other way that show that it would not have been in the interest of justice to permit him to withdraw, not the least of which is the subterfuge that he attempted to perpetrate when he tried to get in. Well, there's also, I mean, going to just a pure interest of justice standard, interest of justice, there's facts on each side of the equation, and, I mean, you've got a 23-year-old person that's an English speaker that just came. Yes, he's being accused of making a false claim, but if he was allowed to withdraw his application, he could wait to another time where maybe he would be able to apply and actually get relief, and then litigate then whether or not he actually made those statements, and that's part of what the interest of justice is. Maybe there may not have been a form of relief regarding inadmissibility right then, but could he have in the future, and if you don't resolve those disputes as to whether or not he made this claim and whether or not this conviction actually qualifies, that is a situation where withdrawal of application. I would note that this has, you know, there are opinions where someone with either committing some type of fraud or prostitution has been granted withdrawal of application, and this will not open the floodgates as the government fears. But we'll get to the floodgates in the next two cases. Well, then I'll submit. I think we understand the position. Thank you both very much. The case just argued is submitted. We will now hear argument in the...
judges: Rymer, Tallman, Ikuta, Cjj